UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-21428-CIV-ALTONAGA/Torres

**RENE ALVARADO BONILLA**,

    Plaintiff,

v.

**ENID STULZ**, Field Office Director,
Hialeah Field Office, U.S. Citizenship
and Immigration Services,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Enid Stulz's[1] combined Motion to Dismiss Amended Complaint and Motion for More Definite Statement [ECF No. 12], filed on July 6, 2020. Plaintiff, Rene Alvarado Bonilla, filed a Response [ECF No. 15]; to which Defendant filed a Reply [ECF No. 20]; and Plaintiff filed a Sur-Reply [ECF No. 26]. The Court has carefully considered the Amended Complaint [ECF No. 10], the parties' written submissions, the record, and applicable law.

### I.  BACKGROUND

This action arises from the non-discretionary denial of Plaintiff's I-485 application for adjustment of status to that of permanent resident. (*See generally* Am. Compl.).

Plaintiff is a native and citizen of Honduras residing in Miami-Dade County, Florida. (*See id*. ¶ 1). On October 11, 1997, Plaintiff entered the United States under a C-1/D transit/crewman

---

[1] Enid Stulz is sued in his capacity as the acting Field Office Director of the U.S. Citizenship and Immigration Services's ("USCIS['s]") Hialeah Field Office.

visa classification. (*See id.* ¶ 12). Plaintiff's "alien crewman" non-immigrant visa expired in 1997. (*Id.* ¶ 15). Plaintiff thereafter remained in the United States with no lawful status. (*See id.* ¶ 16).

On April 1, 2020, Plaintiff was first granted Temporary Protected Status ("TPS") as a Honduran national. (*See id.* ¶ 19 (alterations added)). Since that time, Plaintiff has been renewing his TPS every re-registration period and maintains such status today. (*See id.* ¶ 20).

Although the governing statute states a TPS beneficiary "may travel abroad with the prior consent of the Attorney General[,]" the power to grant that consent was transferred to the USCIS. (*Id.* ¶ 21 n.4 (alteration added; quotation marks omitted)). As a TPS grantee, Plaintiff obtained "consent" from the USCIS to "travel abroad" under 28 U.S.C. section 1254a(f)(3). (*Id.* ¶ 21 (footnote call number omitted)). Plaintiff returned to the United States, arriving at Miami International Airport on June 30, 2017. (*See id.* ¶ 22). Plaintiff was "inspected and admitted" into TPS. (*Id.* (quotation marks omitted)). Plaintiff's passport was stamped with an "approved" visa stamp dated June 30, 2017; and "TPS" is hand-written as the reason for visa approval. (*See* Am. Compl., Ex. A [ECF No. 10-1] 6).

On March 29, 2019, Plaintiff married Jennifer Martinez, a U.S. citizen, who subsequently submitted to the USCIS a Form I-130, Petition for Alien Relative, on Plaintiff's behalf. (*See* Am. Compl. ¶¶ 23–24). Together with the Form I-130, Plaintiff filed a Form I-485, Application to Register Permanent Residence or Adjust Status. (*See id.* ¶¶ 24–25). The USCIS denied Plaintiff's adjustment of status application on February 7, 2020, stating Plaintiff is "barred from adjustment of status" because he is "still considered an alien crewman with immigrant classification C-1 status." (Am. Compl., Ex. B, Notice of Decision [ECF No. 10-2] 1–2).

Plaintiff initiated this action on April 2, 2020, requesting judicial review under the Administrative Procedure Act ("APA") of the USCIS's determination that Plaintiff is ineligible to

adjust his status to that of permanent resident. (*See generally* Compl. [ECF No. 1]; Am. Compl.). Plaintiff asserts the USCIS's adjustment of status denial — based on Plaintiff being considered an alien crewman — is arbitrary, capricious, an abuse of discretion, and unlawful, violating the APA. (*See id.* ¶¶ 80–81, 84 (citing 5 U.S.C. § 706(2)(A)). Plaintiff further claims his adjustment of status denial is part of a change in "longstanding" USCIS policy regarding the eligibility of certain TPS beneficiaries to adjust their status to permanent residents following authorized travel abroad, and that this policy change contradicts Congress's intent in creating and amending TPS. (Am. Compl. ¶¶ 71–73 (citations omitted); *see also id.* ¶¶ 36–68 (outlining the history of TPS and relevant amendments)).

The Amended Complaint requests judicial review of the USCIS's denial of Plaintiff's adjustment of status application; a declaration stating the USCIS's denial was arbitrary, capricious, an abuse of discretion, and unlawful; a declaration stating Plaintiff was "inspected and admitted" into the United States on June 30, 2017; "[r]emand" of Plaintiff's I-485 application "with instructions for [USCIS] adjudication in a manner [consistent] with the Court's declarations and legal determinations[;]" and attorneys' fees and costs. (*Id.* ¶¶ 82–86 (alterations added; citing 5 U.S.C. § 706(2)(A); and 28 U.S.C. §§ 2201, 2412(a)–(b))).

Defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(6) on the basis that the Amended Complaint fails to state a claim for relief. (*See* Mot. 3–14).[2] Alternatively, Defendant requests Plaintiff be required to file a more definite statement under Federal Rule of Civil Procedure 12(e). (*See id.* 4–6).

---

[2] Defendant also invokes Federal Rule of Civil Procedure 12(b)(1) in the Motion's introduction but does not supply any arguments regarding the Court's subject matter jurisdiction. (*See* Mot. 1). The Court will not attempt to divine Defendant's position regarding subject matter jurisdiction.

## II. LEGAL STANDARDS

### A. Failure to State a Claim

A motion to dismiss for failure to state a claim only tests the sufficiency of the complaint; it does not decide the merits of the case. *See Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). When considering facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true. *Am. United Life Ins. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

### B. More Definite Statement

Requiring a more definite statement may be appropriate if a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "In

considering such a motion, [courts] should be mindful of the liberal pleading requirements of the Federal Rules of Civil Procedure, [under] which a 'short and plain statement of the claim' will suffice." *Betancourt v. Marine Cargo Mgmt., Inc.*, 930 F. Supp. 606, 608 (S.D. Fla. 1996) (alterations added; quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

The parties do not dispute that persons admitted into the United States as alien crewmen are statutorily barred from adjusting their status to that of permanent resident under 8 U.S.C. section 1255(c)(1). (*See* Resp. 3). But Plaintiff's APA claim is more nuanced. Plaintiff alleges that the USCIS's decision to deny him adjustment of status as an alien crewman is arbitrary, capricious, and unlawful because: (1) section 304(c) of the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 ("MTINA") permits TPS beneficiaries, like Plaintiff, to travel abroad with the consent of the Attorney General and thereafter be "admitted in the same immigration status the alien had at the time of departure[;]" and (2) the "status" into which such an alien is admitted is TPS — not that of alien crewman. (Am. Compl. 1–2 (quoting MTINA, Pub. L. No. 102-232, § 304(c)(1)(A), 105 Stat. 1749 (1991) (alteration added)). Defendant argues the plain language of the statute and case law support his conclusion that Plaintiff's 2017 admission was as an alien crewman because TPS is not a "status" into which an alien can be admitted. (*See* Mot. 11–14).

*Motion to Dismiss*

Under the APA, agency action may be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When presented with a motion to dismiss for failure to state a claim under the APA, it is generally inappropriate to reach the merits of the claim in the absence of an administrative record unless the action may be resolved

5

with "reference to nothing more than the relevant statute and its legislative history." *Banner Health v. Sebelius*, 797 F. Supp. 2d 97, 112 (D.D.C. 2011) (citation omitted).

Courts defer to an agency's permissible construction of a statute if a statute is silent or ambiguous regarding a specific issue. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). At a minimum, the court gives "an agency interpretation deference under *Skidmore v. Swift & Co.* corresponding to the 'thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Martin v. Soc. Sec. Admin., Comm'r*, 903 F.3d 1154, 1159 (11th Cir. 2018) (footnote call number omitted; quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). However, an "unexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) (alterations adopted; quotation marks omitted; quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005)).

The parties present competing interpretations of MTINA section 304(c), each claiming his respective position is correct as a matter of law. (*See* Am. Compl. ¶ 80; Mot. 1–2). The Court begins by examining the statutory language:

> (1) In the case of an alien described in paragraph (2) whom the Attorney General authorizes to travel abroad temporarily and who returns to the United States in accordance with such authorization —
>
> > (A) the alien shall be inspected and admitted in the same immigration status the alien had at the time of departure . . . .
>
> . . . .
>
> (2) Aliens described in this paragraph are the following:
>
> > (A) Aliens provided benefits under section 301 of the Immigration Act of 1990 (relating to family unity).

> (B) Aliens provided temporary protected status under section 244 of the Immigration and Nationality Act, including aliens provided such status under section 303 of the Immigration Act of 1990.

MTINA § 304(c) (alterations added).

The statute requires admission of aliens who have been provided temporary protected status — and states the admission will be "in the same immigration status the alien had at the time of departure[.]" *Id.* (alteration added). The statute *only* applies to two categories of aliens: family unity beneficiaries and TPS grantees. *See id.* § 304(c)(2). It is unclear whether "immigration status the alien had at the time of departure" means the "status" of family unity and TPS — the only two alien categories to which the section applies — or some broader definition of immigration status. *Compare id.* § 304(c)(1)(A), *with id.* § 304(c)(2). This lack of clarity leads the Court to consider whether Plaintiff plausibly alleges Defendant's interpretation of the statute is arbitrary or capricious. *See Chevron*, 467 U.S. at 843.

Defendant argues "immigration status" includes whatever unfavorable admission status a TPS beneficiary had prior to departing the United States and that subsequent re-admission — even when traveling with the consent of the Attorney General — cannot "jettison" such person's unfavorable status. (Mot. 11–14 (citing *Guerrero v. Nielsen*, 742 F. App'x 793, 799 (5th Cir. 2018); *Reganit v. Sec'y, Dep't of Homeland Sec.*, 814 F.3d 1253, 1259 (11th Cir. 2016); other citations omitted)).

Defendant's cited authorities do not conclusively show Plaintiff fails to state a claim that Defendant's interpretation of section 304(c) is arbitrary or capricious. In *Guerrero*, the Fifth Circuit reasoned that immigration status — specifically, status as an alien crewman — is separate and not mutually exclusive from TPS. *See* 742 F. App'x at 799. The court held an alien crewman's grant of TPS did not "alter the historical circumstances" of an alien's entry into the United States

7

as a crewman. *Id.* Yet, *Guerrero* does not address the issue raised in the present case, where an alien alleges he altered the historical circumstances of his entry by re-admission as a TPS beneficiary with consent to travel abroad by the Attorney General. (*See* Am. Compl. ¶ 69).

Defendant's reliance on *Reganit* is also unpersuasive. *Reganit* involved an alien admitted as a crewman and subsequently given medical parole. *See* 814 F.3d at 1257–58. The Eleventh Circuit held that medical parole in such circumstances did not erase the alien's crewmember status, reasoning that providing a temporary stay for medical reasons did not overcome Congress's intent in barring "all occupational seamen who have relatively easy access to the United States and have used the seaman route to enter the United States for permanent residence." *Id.* at 1258 (alterations adopted; citation omitted). Defendant fails to explain how this reasoning compels dismissal of a claim brought under 5 U.S.C. section 706(2)(A) by a TPS beneficiary (permitted to stay in the United States) and traveling abroad with the Attorney General's consent (permitted to return to the United States) — a different context from that of *Reganit* involving an alien crewman (barred from lengthy stays in the United States) who was medically paroled (provided a temporary stay in the United States limited by medical necessity).

Construction of MTINA section 304(c), regarding a TPS beneficiary's "immigration status" upon return to the United States, is at the heart of the present action. Defendant insists, without citation to authority, that aliens cannot be "admitted" into TPS ("[t]here is no 'TPS Visa'"), so "immigration status the alien [had] at the time of departure" must mean the immigration status Plaintiff had prior to being granted TPS — a crewmember who overstayed his visa. (Mot. 12–13 (alteration added; quotation marks and citation omitted)). Plaintiff, however, details the MTINA's legislative history to support his interpretation that Congress intended TPS holders to travel abroad with consent and be "admitted" into TPS. (*See* Am. Compl. ¶¶ 29–68). Plaintiff also attaches to

his Amended Complaint a copy of his passport with a visa stamp on which "TPS" is handwritten as the reason for the visa, which appears to contradict Defendant's contention that an alien cannot be admitted into TPS. (*See id.* Ex. A 6).

Finally, Plaintiff alleges that Defendant's interpretation of section 304(c) is of recent vintage and without explanation, making plausible Plaintiff's claim that Defendant's interpretation is arbitrary and capricious. (*See* Am. Compl. ¶¶ 71–75, 81); *see also Encino Motorcars*, 136 S. Ct. at 2126 (reasoning that unexplained, inconsistent agency actions may be evidence of arbitrariness and capriciousness).

The parties' briefing asks the Court to delve beyond statutes and legislative history, making it inappropriate to resolve this APA action on a motion to dismiss for failure to state a claim. *See Banner Health*, 797 F. Supp. 2d at 112–13 ("[W]hen the arguments raised go to the question of whether the agency has adhered to the standards of decisionmaking required by the APA, . . . the 'better practice' is to test the parties' arguments in the context of a motion for summary judgment and with reference to the full administrative record." (alterations added; citation omitted); *see also Johnson v. Fla. State Golf Ass'n*, No. 19-cv-3202, 2020 WL 2766168, at *1 (M.D. Fla. May 28, 2020) ("A motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." (alterations adopted; quotation marks and citation omitted)). At this stage, it is sufficient that Plaintiff alleges facts plausibly indicating agency action that may be arbitrary, capricious, or unlawful — warranting judicial review under the APA. *See, e.g.*, *Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1116 (N.D. Cal. 2018) (denying motion to dismiss where the TPS plaintiffs alleged the defendants "adopted a new policy or practice without any explanation for the change").

*Motion for More Definite Statement*

Finally, a more definite statement is not required.  Plaintiff brings a single claim under the APA, requesting judicial review of agency action and related relief under the APA and the Federal Declaratory Judgment Act.  (*See* Am. Compl. ¶¶ 76–86 (citing 5 U.S.C. § 706(2)(A); and 28 U.S.C. §§ 2201, 2412(a)–(b))).  Defendant argues the types of relief requested should be separated into counts because "[i]t is not clear where Petitioner's claims for APA, mandamus or declaratory relief begin or end."  (Mot. 15 (alteration added)).  It is not necessary, however, to separate requests for declaratory and mandamus relief into separate counts; a prayer for relief is not a distinct cause of action.  *See, e.g.*, *Ceant v. Aventura Limousine & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1382 (S.D. Fla. 2012) ("The Court also rejects the suggestion that [plaintiff] must plead the request [for declaratory relief] as a separate count in the Complaint.  'While it may very well be preferable to plead different theories of recovery in separate counts, it is not required.  Nor is there any requirement that they be pleaded in separate paragraphs.'" (alterations added; quoting *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1247 (11th Cir. 2004))); *Branch v. O'Brien*, No. 4:14-cv-147, 2014 WL 7405780, at *2–3 (S.D. Ga. Dec. 29, 2014) (noting a prayer for relief is merely part of the relief sought and not a cause of action).  In the present case, the different types of relief requested all flow from one underlying cause of action: judicial review of a specific USCIS agency action under the APA.  (*See* Am. Compl. ¶¶ 81–82).

Defendant also questions Plaintiff's inclusion of the MTINA's legislative history in the Amended Complaint.  (*See* Mot. 15–16).  Congressional intent of a statute is relevant in determining whether agency interpretation of that statute is arbitrary and capricious.  *See Banner Health*, 797 F. Supp. 2d at 112.  Such history is thus neither vague nor immaterial, particularly

here, where Defendant has challenged the sufficiency of Plaintiff's claim of arbitrary and capricious agency action.

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant, Enid Stulz's Motion to Dismiss Amended Complaint and Motion for More Definite Statement **[ECF No. 12]** is **DENIED**. Defendant shall file an answer to Plaintiff, Rene Alvarado Bonilla's Amended Complaint [ECF No. 10] within the time permitted by the rules.

**DONE AND ORDERED** in Miami, Florida, this 21st day of October, 2020.

*[signature]*
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record